UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Adam L. Meyer, | Case No. 17-CV-1761-ADM-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Nancy Stacken, MSOP-Moose Lake Associate Clinical Director; Peter Puffer, MSOP-Moose Lake Clinical Director; Bruce Beaman, Primary Therapist, unit 1-A; and Jannine M. Hebert, MSOP-Executive Clinical Director, sued in their individual and official capacities, | |
| Defendants. | |

Plaintiff Adam L. Meyer has sued the Defendants, employees of the Minnesota Sex Offender Program (collectively, "MSOP"), alleging the violation of his constitutional rights due to MSOP's decision not to permit visitation with Mr. Meyer's minor niece. (ECF No. 1.) MSOP has moved to dismiss the complaint for failure to state a claim. (ECF No. 20.) Based on the proceedings and the discussion herein, the Court recommends that MSOP's motion be GRANTED IN PART and DENIED IN PART.

**I.   Factual Background**

Mr. Meyer is civilly committed to MSOP. (ECF No. 1 ¶ 1.) He alleges that over several years of his confinement, he has requested visitation with his nieces and nephews, but those requests have been denied. (*Id.* at ¶ 10.) Most recently, Mr. Meyer alleges that on January 1, 2017 he requested reconsideration from defendant Nancy Stacken, the Associate Clinical Director at MSOP's Moose Lake facility

1

regarding the denial of visitation of his niece  (*Id.*)  Mr. Meyer alleges that Ms. Stacken denied his request for reconsideration.  Specifically, he alleges that she explained:

> Mr. Meyer, I agree with your treatment teams' decision to deny visitation with your 16 yr. old niece.  Your history of sexual abuse (perpetration) includes adolescent females, one victim being a family member (cousin).  The most recent attempt at a full disclosure sexual history polygraph resulted in "purposeful non-cooperation."  It is not clear what your current sexual arousal pattern is.  Until your [sic] and your treatment team are clear regarding this, it is inappropriate for visitation with your niece.  Please continue to work toward understanding & management of your sexual behavior.

(*Id.* at ¶ 11.)  Mr. Meyer then filed this lawsuit, claiming that MSOP's decision to deny him visitation with his niece violated his First Amendment right to association, as well as his substantive and procedural due process rights.

## II.     Analysis

MSOP asserts that Mr. Meyer's complaint should be dismissed for several reasons.  Specifically, it argues that Mr. Meyer's claims are not cognizable under the First Amendment and the Due Process Clause, and even if they were, they would be barred by the doctrines of sovereign immunity and qualified immunity.  The Court agrees in part, but disagrees that the case must be dismissed in its entirety.

### A.     Standard

"[A] complaint must contain sufficient factual allegations to '[s]tate a claim to relief that is plausible on its face'" in order to withstand a motion to dismiss under Rule 12(b)(6).  *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  While "detailed factual allegations" are not required, the facts contained within a complaint must be specific enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin. Corp.*, 690 F.3d 951, 955 (8th Cir. 2012).  It is not enough for a complaint to employ "labels and conclusions," or simply restate the elements—more is required.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  "In deciding a motion to dismiss under

Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *Raynor*, 690 F.3d at 955. Against this legal backdrop, the Court finds that the majority of Mr. Meyer's claims do not survive MSOP's motion to dismiss, but that his official capacity claims for prospective injunctive relief should be permitted to continue.

### B.   Official Capacity Claims

Mr. Meyer seeks both injunctive relief and damages from the defendants in their official capacities. The Eleventh Amendment provides states immunity from suits brought in federal courts. *DeGidio v. Perpich*, 612 F. Supp. 1383, 1388 (D. Minn. 1985) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984)). Sovereign immunity applies in all cases where a citizen attempts to bring claims against a state, unless the state has waived its immunity or Congress has abrogated it. *Id.* at 1388–89.

Sovereign immunity fully protects MSOP from official capacity claims seeking damages. Minnesota has not waived its immunity to suit in cases such as these, and Congress has not abrogated it. *See* Minn. Stat. § 1.05 (waiving immunity for certain claims not presented here); *DeGidio*, 612 F. Supp. at 1389. Therefore, the Court lacks subject matter jurisdiction for the official capacity claims for damages presented here.

In contrast, the Court finds that Mr. Meyer's claims seeking prospective injunctive relief are not precluded by sovereign immunity due to the *Ex Parte Young* doctrine. "Under the *Ex Parte Young* doctrine, a private party can sue a state officer in his official capacity to enjoin a prospective action that would violate federal law." *281 Care Committee v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011). Determining whether the *Ex Parte Young* doctrine applies is relatively straightforward. First, the Court asks whether the complaint alleges an ongoing violation of federal law. *Id.* Additionally, the defendant for whom the *Ex Parte Young* exception is sought must have "some connection to the enforcement of the challenged laws." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017). However, "that connection does not need to be primary authority to enforce the challenged law…. Nor does the [state official] need to have the full power to redress a plaintiff's injury in order to have 'some connection' with the challenged law." *281 Care* at 632–33. If the Court determines that the complaint alleges an ongoing violation of federal law and the state official in question has "some

3

connection" with the challenged law, then it moves to the second part of the *Ex Parte Young* inquiry: whether the complaint requests prospective injunctive relief. *See 281 Care*, 638 at 632.

Here the Court finds that Mr. Meyer raises some claims that satisfy the *Ex Parte Young* criteria. Mr. Meyer's complaint alleges an ongoing violation of federal law, and it appears that each institutional defendant has some connection to the policy that Mr. Meyer challenges. Finally, Mr. Meyer requests prospective injunctive relief. (Compl., ECF No. 1 at p. 11.) Accordingly, his claims for prospective injunctive relief are not defeated by sovereign immunity and require further consideration.

### C. Claims for Injunctive Relief

The defendants raise several challenges to Mr. Meyer's claims for injunctive relief. Specifically, MSOP argues that Mr. Meyer failed to specify adequate claims against two individual defendants. Further, they argue that Mr. Meyer has no protected right to association as a civil detainee. As explored below, the Court determines that some of Mr. Meyer's claims should be dismissed, but others should not.

#### 1. Failure to Adequately Plead Facts

Mr. Meyer has failed to state a claim against two individual defendants: Jannine Hebert and Peter Puffer. A plaintiff must plead facts sufficient to demonstrate personal involvement by each defendant in an alleged unconstitutional act challenged under Section 1983. *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001). Mr. Meyer has failed to do so with respect to Ms. Hebert and Mr. Puffer. The complaint asserts that Ms. Hebert and Mr. Puffer were copied on a letter that Mr. Meyer sent to defendant Nancy Stacken requesting visitation with his niece and threatening a lawsuit if Ms. Stacken did not comply. (Compl. ¶ 10.) It then alleges that neither Ms. Hebert nor Mr. Puffer responded to this letter, though it is unclear from the complaint whether they even received the correspondence. (*Id.* at ¶¶ 12–13.) Finally, Mr. Meyer speculates that both Ms. Hebert and Mr. Puffer could have "easily resolved this issue," though he fails to explain how either defendant was capable of doing so. (*Id.*) Such conclusory statements, with no specific facts to support them, cannot sustain a claim under Section 1983. *See Beck*, 257 F.3d at 766; *Ellis v. Norris*, 179 F.3d 1078,

4

1079 (8th Cir. 1999); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### 2. Right to Freedom of Association

MSOP argues that Mr. Meyer fails to state a claim upon which relief can be granted because his right to freedom of association was not violated by MSOP's decision to forbid visitation by his minor niece. The Court disagrees. In the context of prisoners, inmates retain "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Although Mr. Meyer is a civil detainee rather than a prisoner, civilly committed sex offenders likewise "do not retain rights inconsistent with their status." *See Semler v. Ludeman*, No. 09-cv-732 (ADM/SRN), 2010 WL 145275 at *15 (D. Minn. Jan. 8, 2010) (citing *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006)).

The law concerning visitation and freedom of association rights for inmates is a useful starting point for the Court's analysis. A civil detainee of MSOP "is not a prisoner per se, [but] his confinement is subject to the same safety and security concerns as that of a prisoner." *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004). As such, courts often analyze constitutional claims brought by involuntarily committed individuals via analogy to claims brought in the prison context. *See, e.g.*, *Beaulieu v. Ludeman*, 690 F.3d 1017, 1039 (8th Cir. 2012). The Eighth Circuit has determined that MSOP's civil detainees are most similar to pretrial detainees for the purpose of assessing constitutional protections. *Serna v Goodno*, 567 F.3d 944, 948 (8th Cir. 2009). Thus, where possible, the Court considers Mr. Meyer's situation in that context.

### Right to Visitation

The Supreme Court has upheld blanket prohibitions on contact visitation between pretrial detainees and any other individual, regardless of relationship. *Block v. Rutherford*, 468 U.S. 576, 589 (1984). However, the claims in *Block* were based on the Fourteenth Amendment, not the First, a fact highlighted in the dissent. *See id.* at 597 n.1 (Marshall, J., dissenting). Although the Supreme Court has said that freedom of association is "among the rights least compatible with incarceration," it has in the

5

same breath declined to define the parameters of the right to association that survives incarceration. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).

The Eighth Circuit has stated that civil detainees are "entitled to more considerate treatment and conditions of confinement" than prisoners. *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982) (internal quotation marks omitted)). Therefore, "if prisoners continue to have some freedom of association rights, civilly committed individuals at the MSOP must also have such rights." *Williams v. Johnston*, No. 14-cv-369 (DWF/FLN), 2015 WL 1333991 at *7 (D. Minn. Jan. 28, 2015).[1] Although the jurisprudence regarding the extent of a civil detainee's right to visitation through the First Amendment is far from settled, the case law indicates that some version of such a right exists and the defendants have failed to establish otherwise. Accordingly, the Court finds that Mr. Meyer has pleaded a violation of his First Amendment right to freedom of association well enough to survive the motion to dismiss stage.

### The *Turner* Test

MSOP argues that even if Mr. Meyer has a right to the freedom of association, MSOP's limitation of his visits is valid due to a legitimate government interest. In determining whether a prison regulation survives scrutiny despite impinging on an inmate's constitutional rights, Courts apply a test derived from *Turner v. Safley*, 482 U.S. 78, 89 (1987.) Although Mr. Meyer's case does not concern a prison regulation, it is nonetheless a useful test. *See Williams*, 2015 WL 1333991 at * 7 (considering application of the *Turner* test regarding an MSOP regulation); *Ivey v. Mooney*, No. 5-cv-266 (JRT/FLN), 2008 WL 4527792 at *4 (D. Minn. Sept. 30, 2008) (finding that the First Amendment rights of a civil detainee should be reviewed using a "modified version" of the *Turner* test). MSOP urges that, when the *Turner* test is applied to Mr. Meyer's complaint, dismissal is required.

---

[1] Indeed, Minnesota has statutorily guaranteed civil detainees at MSOP the right to receive visitors, "[s]ubject to the general rules of the treatment facility," and subject to restrictions made by the head of the treatment facility for the medical welfare of a patient. Minn. Stat. § 253B.03 subd.3.

>The *Turner* test requires consideration of four factors:
>
>(1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it;
>
>(2) whether plaintiff has alternative means of exercising his First Amendment rights;
>
>(3) the impact that accommodation of his First Amendment rights would have on guards and other patients, and on the allocation of the general resources of the institution; and
>
>(4) whether obvious, easy alternatives exist to meet the state's objectives.

*Id.* at *7 (citing *Turner*, 482 U.S. at 89–91). Mr. Meyer does not disagree that the *Turner* test is the appropriate analytical framework, but instead argues that applying the *Turner* factors at the motion to dismiss stage in this case is premature. The Court agrees.

In deciding a motion to dismiss, the Court may only consider the factual allegations of the complaint. *See, e.g.*, *Knutson v. Ludeman*, No. 10-cv-357 (PJS/LIB), 2011 WL 821253 at *9 (D. Minn. Jan. 12, 2011). The Court is unable to meaningfully weigh the *Turner* factors at this stage because the necessary record is not developed. *See Beaulieu v. Ludeman*, No. 7-cv-1535 (JMR/JSM), 2008 WL 2498241 at *20 (D. Minn. June 18, 2008) (denying a motion to dismiss due to a lack of factual development regarding the *Turner* factors). Though MSOP has argued that its visitation policy as a whole serves a legitimate therapeutic interest, the Court is unable to determine whether the policy is valid as it has been applied to Mr. Meyer. *See Daywitt v. Minnesota Department of Human Services*, 17-cv-5574 (NEB/TNL), 2018 WL 8224922 at *7 (D. Minn. Dec. 14, 2018) (denying motion to dismiss in part due to lack of detail about rationale behind MSOP's decision as it related to the plaintiffs). Indeed, several courts in this district have concluded that analysis of the *Turner* factors at the motion to dismiss stage is premature. *See Stone v. Jesson*, No. 11-cv-951 (WMW/HB), 2017 WL 1050393 at *4 (D. Minn. Mar. 17, 2017) (denying motion to dismiss due to undeveloped record as to *Turner* factors); *Williams*, 2015 WL 1333991 at *7 (same); *Knutson*, 2011 WL 821253 at *9 (same); *Beaulieu v. Ludeman*, No. 7-cv-1535 (JMR/JSM), 2008 WL 2498241 at *20 (D. Minn. June 18, 2008) (same).

7

In sum, the Court finds that Mr. Meyer has pleaded a violation of his First Amendment right to freedom of association, and dismissal as a result of application of the *Turner* test is premature. Accordingly, MSOP's motion to dismiss should be denied as to the First Amendment claims for prospective injunctive relief.

### 3. Due Process Claims

Mr. Meyer also alleges that his due process rights under the Fourteenth Amendment have been violated by MSOP's alleged refusal to permit visitation by his niece. The Fourteenth Amendment provides that the government shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Both substantive and procedural violations of due process are prohibited by the Fourteenth Amendment.

#### Substantive Due Process

A substantive due process claim requires a showing that governmental actions violated one or more fundamental rights and that the conduct was "shocking to the contemporary conscience." *Truong v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016) (quoting *Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007)). The second element requires "conduct so severe, so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhuman abuse of official power literally shocking to the conscience." *Id.* (quoting *Moran v. Clark*, 296 F.3d 638, 647 (8th Cir. 2002)). Given this high bar, the Court determines that Mr. Meyer has failed to plead a substantive due process claim. He has not alleged any conduct that could possibly rise to the level of "conscious shocking." Accordingly, Mr. Meyer's substantive due process claims should be dismissed.

#### Procedural Due Process

When considering a claim that governmental conduct has violated a citizen's procedural due process rights, Courts apply a two-step analysis:

> First, the court asks whether the plaintiff has been deprived or a protected liberty or property interest…. [T]he court [must then] decide what process the plaintiff is entitled to by balancing the specific interest that was affected, the likelihood that the institutional procedures would result in an erroneous deprivation, and the institution's interest in providing the process that it did, including the administrative costs and burdens of providing additional process.

*Williams*, 2015 WL 1333991 at *8 (citing *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). MSOP focuses its argument solely on its insistence that Mr. Meyer has no constitutionally protected interest in visitation with his niece. However, as discussed above, the Court has determined that Mr. Meyer has at least some right of association protected by the First Amendment.

At the second step of the procedural due process inquiry, the Court finds that, as with the *Turner* factors above, the record is not developed enough at this point to determine whether Mr. Meyer received the process to which he is constitutionally entitled. Significant additional information, such as how the visiting policy is generally applied to similar requests, whether Mr. Meyer's request received appropriate consideration, and what burden any additional process might place on MSOP, is necessary before the Court can decide Mr. Meyer's procedural due process claim. *Williams*, 2015 WL 1333991 at *9–10; *Knutson*, 2011 WL 821253 at *9.

### E.    Qualified Immunity

Finally, the Court must consider whether the individual defendants are entitled to qualified immunity. Qualified immunity protects public officials from suit in specific circumstances. When an official acts in a constitutionally deficient manner, but does so due to a reasonable misunderstanding or misinterpretation of the law governing the circumstances, they are entitled to qualified immunity, which protects them from liability for damages. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). However, an official cannot take advantage of qualified immunity if: 1) the official deprived the plaintiff of a constitutional or statutory right, and 2) the right was clearly established, such that "a reasonable official would have understood that his conduct was unlawful under the circumstances." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). Whether qualified immunity is applicable in a given circumstance is a question of law. *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008).

9

The Court has determined that Mr. Meyer has adequately pleaded a constitutional violation, thereby meeting the first prong. However, based on the discussion, *supra*, it can hardly be said that Mr. Meyer's right to freedom of association with minor visitors is clearly established such that MSOP staff would understand that denying him a visit from his niece is unlawful. *See Overton*, 539 U.S. at 131 ("We do not hold, and we do not imply, that any right to intimate association is altogether terminated by incarceration…."); *but see id.* at 131–32 ("We need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration…."). Even assuming all of the allegations in Mr. Meyer's complaint to be true, qualified immunity protects the individual defendants from liability for damages here. Therefore, the individual plaintiffs are entitled to qualified immunity, and cannot be sued for damages in their individual capacities.

### III.  Recommendation

As explored above, the Court concludes that Mr. Meyer has adequately pleaded certain constitutional claims, but others require dismissal. Accordingly, **IT IS HEREBY RECOMMENDED THAT:**

1. MSOP's Motion to Dismiss (ECF No. 20) be **GRANTED IN PART AND DENIED IN PART:**

    a. MSOP's Motion to Dismiss should be **GRANTED** with respect to: Mr. Meyer's official capacity claims for damages; all claims against defendants Hebert and Puffer; Mr. Meyer's substantive due process claims; and all claims against defendants in their individual capacities.

    b. MSOP's Motion to Dismiss should be **DENIED** with respect to: Mr. Meyer's official capacity claims for prospective injunctive relief under the First Amendment and the procedural Due Process Clause.

Date:  July 25, 2019　　　　　　　　　　　*s/ Katherine Menendez*
　　　　　　　　　　　　　　　　　　　　Katherine Menendez
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge